# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SAM UKA, et al.,         )
                               )
             Plaintiffs,     )
                               )     No. 4:06-CV-29 CAS
       v.                     )
                               )
MAMA'S BAR & GRILL RESTAURANT,   )
et al.,                       )
                               )
             Defendants.    )

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' motion to dismiss the pro se plaintiffs' complaint. Plaintiffs oppose the motion. For the following reasons, the Court will grant the motion to dismiss with respect to plaintiffs' claims based on federal law and will decline to exercise jurisdiction over and will dismiss without prejudice plaintiffs' claims based on state law.

**The Complaint**.

The plaintiffs' sixty-six page complaint is lengthy and rambling. The complaint does not contain separate counts, but begins by listing seventeen "Grounds and Statutes" which the Court will paraphrase as follows:

> (1) Civil conspiracy with harmful intent and slander in violation of 42 U.S.C. §§ 1981, 1983, 1985 and 1986;
>
> (2) sexual assault in violation of Federal Rule 32 (18 U.S.C. §§ 2241 and 2248) and Federal Rule 412 of sexual offenses;
>
> (3) "fraud in conspiracy to violate" 42 U.S.C. § 1983 "that denies the right to engage in conspired activities as guaranteed by the National [Labor] Relations Act," 29 U.S.C. § 157;

(4) "framing and railroading in conspiracy to violate" 42 U.S.C. § 1983 "that denies the right to engage in conspired activities as guaranteed by the National [Labor] Relations Act," 29 U.S.C. § 157;

(5) "false arrest in conspiracy to violate" 42 U.S.C. § 1983 "that denies the right to engage in conspired activities as guaranteed by the National [Labor] Relations Act," 29 U.S.C. § 157;

(6) "false imprisonment in conspiracy" to violate 42 U.S.C. § 1983 "that denies the right to engage in conspired activities as guaranteed by the National [Labor] Relations Act," 29 U.S.C. § 157;

(7) "malicious prosecution in conspiracy to violate" 42 U.S.C. § 1983 "that denies the right to engage in conspired activities as guaranteed by the National [Labor] Relations Act," 29 U.S.C. § 157;

(8) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1983;

(9) interference with Due Process in violation of Federal Rule 12.45, 88, 91 ands 92;

(10) improper civil commitment;

(11) undue influence in violation of Professional Conduct State Rule 12.20, 12.21, Missouri Supreme Court Rule 4 and Fed. Rule 92;

(12) racketeering "in violation with 1970 'RICO' Act and State Rule 12.44;"

(13) "obstruction of administration of justice in violation with Rule 26" of the Federal Rules of Civil Procedure;

(14) invasion of privacy;

(15) tortious interference with prospective business advantage;

(16) intentional infliction of emotional distress; and

(17) conspiracy to interfere with equal rights under the law in violation of 42 U.S.C. § 1981.

The complaint states that the plaintiffs reside in St. Louis, Missouri. The defendants in the case are Mama's Bar & Grill Restaurant, Shqipe Rexha, Kujtim Rexha, Helena Rexha and Blenard

Rexha, all of whom are alleged to reside or conduct business in the City of Clear Water, Florida. Plaintiff Luiza Uka and defendant Shqipe Rexha are sisters. The parties all appear to be originally from the country of Albania or of Albanian descent. The complaint does not allege any separate facts identifying or concerning defendants Kujtim Rexha, Blenard Rexha, or Helena Rexha.

Plaintiffs' complaint includes a three-page statement of facts, see Complaint at 7-10, followed by forty-five pages consisting of 128 numbered paragraphs of factual statements under the heading "Causes of Action: Defendant Shqipe Rexha," which is described more fully below. See Complaint at 10-55, ¶¶ 3-131. The next section of the complaint is entitled "Damages Sought from the Defendant," which seeks damages against non-parties John J. Riley and the Circuit Court of the City of St. Louis, Missouri, but not against Shqipe Rexha. Id. at 55-57.

The next sections of the complaint consist of a list of twenty-seven causes of action asserted against defendants Kujtim Rexha, Blenard Rexha and Helena Rexha, and incorporate by reference paragraphs I-IV and 3-131 of the complaint, but these sections of the complaint do not include any factual assertions specific to these defendants.[1] See Complaint at 58-63. Finally, the complaint

---

[1]The causes of action listed against Kujtim Rexha, Blenard Rexha, and Helena Rexha are:

Civil Conspiracy with Harmful Intent and Slander;
Sexual Assault;
Fraud;
Conspiracy to Deprive Plaintiffs of Access to the Courts;
Defamation;
False Statements;
False Arrest;
False Imprisonment;
Malicious Prosecution;
Legal Malpractice;
Conspiracy to Interfere with Civil Rights;
Deception of Courts;
Interference with Due Process;

alleges the same twenty-seven causes of action against defendant Mama's Bar & Grill Restaurant, and incorporates by reference paragraphs I-IV and 3-131 of the complaint. See Complaint at 64, ¶¶ 138-39. The complaint alleges that the restaurant is a "food establishment, partnership owned and managed" by the four individual defendants, which was "established on September 2005 from a joint adventure of illegal conducts, benefits and ill based financial collections the defendants were profiting from their loyalty and service to other conspirators against the plaintiffs' lives and businesses." See id. at 64-66, ¶¶ 140, 142-44.

The recitation of the facts alleged in the portion of the complaint entitled "Causes of Action: Defendant Shqipe Rexha" is difficult to follow, but plaintiffs describe in great detail various interactions and conflicts between the Ukas and Shqipe Rexha dating back to 1995. The essence of the complaint consists of allegations that Shqipe Rexha conspired with St. Louis City police detectives, plaintiff Sam Uka's former criminal defense attorneys, a St. Louis Circuit Court judge and others to trump up false criminal charges against Sam Uka, which resulted in his conviction and caused the plaintiffs' businesses to close.

---

Improper Civil Commitment;
Undo [sic] Influence;
Racketeering;
Obstruction of Administration of Justice;
Breach of Contract;
Breach of Fiduciary Duty;
Failure to Participate in Good Faith During ADD Process;
Tortious Interference with Prospective Business Advantage;
Intentional Infliction of Emotional Distress;
Conspiracy to Interfere with Equal Rights Under the Law;
Fraudulent Concealment;
Negligence;
Vicarious Liability;
Tortious Interference with Sister-Sister Relationship

The complaint includes lengthy portions of transcripts of taped telephone conversations as well as trial testimony in underlying cases, including at least one criminal case against Sam Uka and a civil case filed by Kujtim Rexha and Shqipe Rexha against Sam and Luiza Uka. The Court will summarize the allegations of the complaint as alleged against Shqipe Rexha:

Plaintiffs allege that in June 1996 the defendant Shqipe Rexha held a "first secret meeting" at her residence to conspire with a number of other persons who are not defendants in this action "in attempt to prosecute with fraud allegation plaintiff Sam Uka like he was physically abusing his wife,"[2] Complaint at 10, ¶ 3. A second meeting was held at non-party Julius Mehmeti's house in July 1996. Id., ¶ 4. The defendant "personally or vicarious contributed in" causing police detectives to visit plaintiffs' residence on two occasions, in making a bomb threat against plaintiffs, and in threatening plaintiffs with a steak knife as they were leaving a restaurant, all in July 1996. Id., ¶¶ 4-10.

Paragraph 22 of the Complaint states:

After failing to prosecute plaintiff Sam Uka with domestic fraud charges, the defendant [Shqipe Rexha] personally or vicariously contributed in organizing to defraud the investigation conducted from St. Louis Police against the defendant in full knowledge and for personal profits became a tool of other conspirators and abused the relationship with plaintiff Luiza Uka as a covering up scheme of defendant's illegal conducts. The defendant intentionally accepted other conspirators and their manipulations in translation for immigration and financial benefits. All of this carefully designed with intends [sic] to cover up and switch the case build [sic] against the defendant and other associates to look like a dispute about money between two sisters.

---

[2]The alleged conspirators are Michael Spaho, Julius Mehmeti, Maria Mehmeti, Patricia Jarvis, Elkin Kistner, Richard Sindel, Ronald Sheppard, Kurt Battig, David Menendez, and John J. Riley. Messrs. Kistner and Sindel are plaintiff Sam Uka's former attorneys in his criminal case. Messrs. Sheppard, Battig and Menendez are alleged to be police detectives with the Metropolitan St. Louis Police Department. Mr. Riley is a Circuit Judge of the 22nd Judicial Circuit Court, City of St. Louis, Missouri.

Ultimately, plaintiffs allege that this conspiracy resulted in the false arrest in September 1996 and conviction in state court of plaintiff Sam Uka on charges of telephone harassment of the Rexhas and unlawful use of a weapon against the Rexhas, as a result of Shqipe Rexha's conspiracy with others, including Julius Mehmeti, to bribe Mr. Uka's attorney, the trial judge, and St. Louis City police detectives.[3]  See Complaint, ¶¶ 46-99.  Plaintiffs allege that as a result of a campaign of continuous harassment by Shqipe Rexha acting with "other conspirators," plaintiff Sam Uka was arrested a total of eight times and the plaintiffs were required to close their previously-successful businesses, plaintiffs Iliria Gourmet Restaurant and Flying Eagles Daycares, in 1997 and 1998.  See Complaint ¶¶ 35-49.

Plaintiffs also allege that defendant Shqipe Rexha "in concert with other conspirators in respect of influencing plaintiff's second attorney, and conspiring in the sentencing technicalities, . . . personally or vicariously contributed to the Missouri Court of Appeals, Eastern District decision of denying a formal appeal filed on behalf of Sam Uka from plaintiff's second attorney."  Complaint, ¶ 100.

Plaintiffs also allege that defendant Shqipe Rexha "personally or vicariously contributed in the humiliation and sexual assaults made against the plaintiff" Sam Uka while he was walking into the booking room at St. Louis Metropolitan Police Headquarters on August 28, 2000, when someone present made the comment, "Because if he goes in jail and has not an attorney to appeal, you and me

_____

[3]The Court takes judicial notice of Mr. Uka's appeal of his conviction, reported in State v. Uka, 25 S.W.3d 624 (Mo. Ct. App. 2000).  The Court may take judicial notice of public records and may thus consider them on a motion to dismiss without converting the motion to one for summary judgment.  See Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003); Faibisch v. University of Minnesota, 304 F.3d 797, 802-03 (8th Cir. 2002).  The appeal was dismissed as to the unlawful use of a weapon charge, on which Mr. Uka received a suspended sentence, and the conviction was affirmed as to the harassment charge

are going to have a lot of fun, having sex with his wife, Luiza." Plaintiffs allege that as a result of these comments, they were humiliated and sexually assaulted. Complaint, ¶¶ 101-103.

Plaintiffs allege that Shqipe Rexha sued them in state court in 2001 and that a trial was conducted on the civil suit in 2004, in which plaintiffs prevailed. Complaint, ¶¶ 104-05. Plaintiffs also allege that as a direct result of "these alleged unlawful conducts perpetrated form [sic] the defendant [Shqipe Rexha] and others associates," plaintiff Sam Uka lost his job at Target Stores. Complaint, ¶ 107.

Plaintiffs allege that between 1998 and 2005, Shqipe Rexha personally and in concert with other unnamed conspirators tortiously interfered with the relationship between plaintiff Sam Uka and his wife, plaintiff Luiza Uka.

Plaintiffs allege that Shqipe Rexha and other unnamed associates conspired to turn the "court of justice into an accessory of railroading and influencing" the plaintiff Sam Uka's former criminal defense attorneys, Elkin Kistner and Richard Sindel, which resulted in the violation of plaintiff Sam Uka's right to due process, and resulted in "humiliation and sexual assault." Complaint, ¶ 124.

Plaintiffs further allege that Shqipe Rexhas:

In concert with other conspirators, as approximate and result of the defendant unlawful conducts, personally or vicariously conspired in influencing of such premeditated acts where convicted rapist Michael Spaho, reported to police for bomb threats against the plaintiffs since early 1996, was allowed free and from which between 1997 and 1999, contributed in the torture and rape, or six women in St. Louis area.

Complaint, ¶ 126.

As noted above, in the Damages portion of the complaint plaintiffs seek judgment against non-parties Missouri State Circuit Judge John J. Riley, who presided over Mr. Uka's state criminal trial,

and the Circuit Court of the City of St. Louis, in the amount of $125,000,000.00.  Complaint at 55-57.  Plaintiffs then incorporate by reference all of their factual allegations against Shqipe Rexha against defendants Kujtim Rexha, Blenard Rexha, and Helena Rexha.  Id. at 58-63.  There are no specific allegations made against any of the Rexhas other than Shqipe.  Finally, plaintiffs incorporate by reference all of the factual allegations of the complaint against defendant Mama's Bar & Grill Restaurant.

**Legal Standard**.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  A complaint shall not be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of the claim entitling them to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not whether the plaintiffs will ultimately prevail, but whether the plaintiffs are entitled to present evidence in support of their claim.  Id.; see also Neitzke v. Williams,  490 U.S. 319, 327 (1989).  When ruling on a motion to dismiss, this Court must take the allegations of the complaint as true and liberally construe the complaint in a light most favorable to the plaintiffs.  Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir.), cert. denied, 540 U. S. 825 (2003).  The Court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

Pro se pleadings are to be liberally construed and are held to less stringent standards than those drafted by an attorney.  Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).  Nevertheless, pro se pleadings must not be conclusory and must state sufficient facts which,

when taken as true, support the claims advanced. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). The Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

After service of process, a court may sua sponte dismiss claims under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief can be granted. Murphy v. Lancaster, 960 F.2d 746, 748 (8th Cir. 1992) (per curiam); Smith v. Boyd, 945 F.2d 1041, 1042-43 (8th Cir. 1991). In this case, the defendants have filed a motion to dismiss, in part for failure to state a claim upon which relief can be granted, and therefore plaintiffs are on notice of a potential dismissal.

**Discussion**.

Defendants move to dismiss the complaint on the following grounds: (1) the Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a) because there is no diversity of citizenship, as all of the parties resided in Missouri at all times mentioned in the complaint; (2) failure to state a claim upon which relief can be granted as there are no facts pleaded to support the seventeen causes of action asserted, and the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure; (3) the claims for fraud, false arrest, obstruction of justice, malicious prosecution, civil rights, due process and undue influence are barred by res judicata principles; (4) plaintiffs Flying Eagles Daycares and Iliria Gourmet Restaurant lack the capacity to sue and therefore claims asserted by these plaintiffs should be dismissed; and (5) the complaint is legally frivolous and consists of rambling personal attacks designed to harass and intimidate the defendants.

### A. Existence of Jurisdiction

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006). The diversity jurisdiction created by 28 U.S.C. § 1332 is to be strictly construed. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992). Therefore, any doubts about the existence of diversity jurisdiction are to be resolved against finding jurisdiction. 15 James Wm. Moore et al., Moore's Federal Practice § 102.13 (3d ed. 2006). If the jurisdictional allegations of the complaint are challenged by the defendant, the plaintiff has the burden of establishing jurisdiction by competent proof and by a preponderance of the evidence. Janzen v. Goos, 302 F.2d 421, 424 (8th Cir. 1962).

In a case based upon diversity jurisdiction, the amount in controversy must exceed $75,000.00, exclusive of interest and costs, 28 U.S.C. § 1332(a). In addition, there must be allegations of each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. 28 U.S.C. §§ 1332(a), 1332(c)(1); see Sanders v. Clemco Industries, 823 F.2d 214, 215 n.1 (8th Cir. 1987).

The defendants contend that diversity of citizenship does not exist because at all times mentioned in the complaint they were residents of St. Louis, Missouri. Defendants do not challenge the allegations concerning the amount in controversy. Defendants' argument misses the mark because the existence of diversity of citizenship must be determined at the time the suit is filed, not when the cause of action arose. See Altimore v. Mount Mercy College, Cedar Rapids, IA, 420 F.3d 763, 768 (8th Cir. 2005) (citing Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990)). Defendants' contentions are therefore irrelevant.

The key issue is whether the parties were <u>citizens</u> of different states at the time the complaint was filed. The complaint does not contain allegations concerning the citizenship of any of the parties, but rather alleges the parties' residency. It is well established that allegations concerning the parties' residency do not satisfy requirements for federal diversity jurisdiction. <u>Jones v. Hadican</u>, 552 F.2d 249, 251 n.3 (8th Cir.), <u>cert. denied</u>, 431 U.S. 941 (1977); <u>Pattiz v. Schwartz</u>, 386 F.2d 300, 301 (8th Cir. 1968) (citing cases). As a result, mindful of the obligation to construe diversity jurisdiction strictly, the Court concludes that diversity jurisdiction is lacking in this case because there are no allegations of the parties' citizenship.

Nonetheless, the Court has federal question jurisdiction over this case, <u>see</u> 28 U.S.C. § 1331, because plaintiffs' complaint asserts numerous causes of action under a federal statute, 42 U.S.C. § 1983.

**B.  Failure to State a Claim Upon Which Relief Can be Granted and Res Judicata.**

**1.  Section 1983 Claims**.

Defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Defendants also move to dismiss a number of plaintiffs' claims based on principles of res judicata. Specifically, defendants assert that plaintiffs' claims alleging fraud, false arrest, obstruction of justice, malicious prosecution, civil rights, due process and undue influence are barred by res judicata as a result of plaintiff Sam Uka's conviction in state court of unlawful use of a weapon and harassment. Plaintiffs respond that their detailed factual allegations belie defendants' assertion that their complaint does not state a claim, but do not respond to defendants' res judicata assertions.

The Court will first address defendants' motion with respect to plaintiffs' claims under Section 1983. "Section 1983 does not confer substantive rights but merely provides a means to vindicate

rights conferred by the Constitution or laws of the United States." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000). To state a claim under 42 U.S.C. § 1983, plaintiffs must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law.[4] See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, to evaluate plaintiff's § 1983 claims, the Court must look to the complaint for a description of the constitutional rights alleged to be at issue. Because the Court finds that plaintiffs have failed to present a viable claim for the violation of a right secured by the Constitution or laws of the United States, it is not necessary to address the second element further.

Although the complaint lists seventeen separate causes of action, the gravamen of the Section 1983 claims is wrongdoing by the defendants, in particular Shqipe Rexha, in connection with the unlawful procurement of plaintiff Sam Uka's arrests and criminal conviction in state court.

The Supreme Court has held that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or as in this case, for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into

---

[4]"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law.'" West, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Private violation of constitutional rights or federal statutes by a private actor is not sufficient to state a claim under section 1983. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 940 (1982). A private actor may be liable under § 1983 if a plaintiff can establish a conspiracy or joint participation between the private actor and a state official to deprive the plaintiff of constitutional rights. See Lugar, 457 U.S. at 931; Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir.), cert. denied, 484 U.S. 828 (1987). In this case, plaintiffs have pleaded that the defendants, who are private actors, acted in concert and conspired with others, including police officers and a state circuit court judge, to violate plaintiffs' civil rights.

question by federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. See Heck v. Humphrey, 512 U.S. 477, 484-85 (1994). A claim for damages bearing such a relationship to a conviction or sentence that has not been invalidated is not cognizable under Section 1983. Id. at 486-87. Thus, when a plaintiff seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence. If it would, the complaint must be dismissed without prejudice unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

The rationale behind Heck's "favorable termination" rule is that a successful Section 1983 action would imply the invalidity of the criminal conviction and lead to inconsistent results. This rule "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution." Heck, 512 U.S. at 484 (citations omitted).

Heck involved a Section 1983 claim arising out of allegedly unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and conviction. In analyzing whether Heck's claim was cognizable under Section 1983, the Supreme Court drew a comparison to the common-law cause of action for malicious prosecution, one element of which is termination of the prior criminal proceeding in favor of the accused. The Supreme Court upheld the dismissal of Heck's suit, holding that if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the [Section 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. This rule does not stem from exhaustion principles, but rather from "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." Id. at 486.

Based upon the principles established in <u>Heck</u>, a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Id.</u> at 487. The Supreme Court noted, however, that if a "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." <u>Id.</u> (footnotes omitted).

Applying these principles to the case at hand, it is apparent that plaintiffs' conspiracy claims against the defendants under Section 1983 for fraud, "framing and railroading," false arrest, false imprisonment, malicious prosecution, conspiracy to interfere with civil rights, interference with due process, and conspiracy to interfere with equal rights under the law, including allegations that the defendants presented false evidence, withheld evidence, bribed officials or otherwise corrupted the judicial process in any manner (Complaint, Grounds 1, 3-9, 17) would, if successful, necessarily imply the invalidity of Sam Uka's convictions for harassment and unlawful use of a weapon.[5] <u>See</u> <u>Heck</u>, 512 U.S. at 479 (claims that defendants "knowingly destroyed" exculpatory evidence and caused "an illegal and unlawful voice identification procedure" to be used at plaintiff's trial were barred until the conviction was reversed or otherwise declared invalid); <u>see also</u> <u>Evans v. Lopez</u>, 2000 WL 31357,

---

[5]Because the Court concludes that plaintiffs' Section 1983 claims are barred by <u>Heck</u>, it need not examine whether all of the Section 1983 claims alleged actually state a claim. For example, plaintiffs assert claims for a fraud or conspiracy to commit fraud, slander or conspiracy to commit slander, and a "framing and railroading" conspiracy claim under Section 1983. As stated above, however, Section 1983 is only a vehicle for asserting claims based on violation of a right guaranteed by the Constitution or a federal statute. In addition, the Court does not address whether plaintiff Luisa Uka has standing with respect to many of the claims alleged.

*5 (N.D. Ill. May 12, 2000) (Heck bars any claim that "defendants falsified evidence, withheld evidence, or otherwise corrupted the judicial process.")

Although not all false arrest or false imprisonment claims are barred by Heck, those claims are barred in this case because of the nature of plaintiffs' allegations. Plaintiffs allege that the defendants conspired to manufacture false evidence against Sam Uka which caused his arrest and ultimately his conviction and imprisonment. Because Mr. Uka was convicted of harassment and unlawful use of a weapon based on the same allegedly false evidence that procured his arrest, success on these claims under Section 1983 would necessarily imply the invalidity of his conviction. Cf. Wiley v. City of Chicago, 361 F.3d 994, 997-98 (7th Cir.) (false arrest claim alleged that defendant police officers had falsified evidence by planting illegal drugs on Wiley; to the extent the only evidence of the crime available to the prosecution was the falsely planted evidence, success on the false arrest claim would undermine the related criminal prosecution), cert. denied sub nom Jones v. Wiley, 543 U.S. 819 (2004) . Plaintiffs have not met their burden to establish that Mr. Uka's conviction has been invalidated. See Heck, 512 U.S. at 484-85. As a result, these claims are not cognizable under Section 1983 and must be dismissed without prejudice. See id. at 486-87.

Plaintiffs have pleaded facts concerning an earlier, unsuccessful criminal prosecution of Mr. Uka which ended in approximately April 1998, although the facts concerning this prosecution are unclear. See Complaint at 34-35, ¶¶ 43-44, 52. The complaint does not indicate what the charges against Mr. Uka were, whether the charges were dismissed, or whether the case ended in a mistrial or a not-guilty verdict. To the extent plaintiffs' Section 1983 claims are based on this unsuccessful prosecution, however, they are barred by the applicable statute of limitations.

Claims under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state where the claim arose. Bridgeman v. Nebraska State Penitentiary, 849 F.2d 1076, 1077 (8th Cir. 1988) (per curiam). The Missouri five-year personal injury statute of limitations, Mo. Rev. Stat. § 516.120(4) (2000), applies to § 1983 actions. See Garrett v. Clarke, 147 F.3d 745, 746 (8th Cir. 1998); Lovejoy v. Goodrich, 798 F.2d 1201, 1202 n.2 (8th Cir. 1986).

Although courts look to state law to determine the applicable limitations period, federal law governs when a cause of action under § 1983 accrues. See, e.g., Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980); Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir.1993); Day v. Moscow, 955 F.2d 807, 813 (2d Cir.), cert. denied, 506 U.S. 821 (1992). Under federal law, the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the injury which is the basis of the action. Gartrell, 981 F.2d at 257; cf. Bressler v. Graco Children's Prod., Inc., 43 F.3d 379 (8th Cir. 1994) (under Iowa law, a cause of action accrues when plaintiff knows or should reasonably have discovered the injury and its cause). The Eighth Circuit looks to the face of the complaint to determine when claims accrued in a Section 1983 action. See Penn v. Iowa State Bd. of Regents, 999 F.2d 305, 307 (8th Cir. 1993).

At the latest, all of plaintiffs' claims relating to the unsuccessful prosecution of Sam Uka accrued at the time the criminal proceedings upon which the claims are based terminated in his favor. The complaint alleges that the proceedings terminated in his favor in 1998. Because this action was not filed until 2006, plaintiffs' Section 1983 claims arising from the unsuccessful prosecution of plaintiff Sam Uka, whether labeled as false arrest, false imprisonment, equal protection violations, malicious prosecution, or other, are untimely because they were not filed within five years after the unsuccessful conclusion of the criminal case against him.

### 2. **Sexual Assault Claim**.

Plaintiffs allege that they were sexually assaulted on August 28, 2000 when an unidentified individual at the Metropolitan St. Louis Police Department made the comment, "Because if [Sam Uka] goes in jail and has not an attorney to appeal, you and me are going to have a lot of fun, having sex with his wife, Luiza." Plaintiffs allege that as a result of these comments, they were humiliated and sexually assaulted. Complaint at 2, ¶2; and at 46-48, ¶¶ 101-103. The complaint asserts that this claim is brought pursuant to Federal Rule 32, 18 U.S.C. §§ 2241 and 2248, and Federal Rule 412. The Court assumes that plaintiffs refer to Federal Rule of Criminal Procedure 32, as Federal Rule of Civil Procedure 32 concerns depositions, and Federal Rule of Evidence 412, which concerns the relevance of an alleged sexual offense victim's past sexual behavior or alleged sexual disposition.

This claim fails to state a claim upon which relief can be granted. Neither of the cited federal statutes provide a private cause of action to the plaintiffs. Title 18 U.S.C. ¶ 2241 establishes the crime of aggravated sexual assault committed "in the special maritime and territorial jurisdiction of the United States or in a Federal prison" or in a prison or facility in which persons are held in custody by the direction of or pursuant to a contract or agreement with the United States Attorney General, or for certain sexual assaults of a child under the age of 12, none of which are applicable under the facts pleaded in the complaint. Title 18 U.S.C. ¶ 2248 is inapplicable because it concerns criminal restitution. Similarly, neither of the federal rules plaintiffs cite provide any means of redress.

Moreover, as private individuals plaintiffs do not have the right to prosecute the defendants for alleged violations of federal criminal statutes. See 28 U.S.C. § 516; In re Persico, 522 F.2d 41, 54 (2d Cir. 1975) ("The Executive Branch specifically, the Attorney General has the power to conduct federal criminal litigation. It is an executive function within the exclusive prerogative of the

Attorney General.") (internal quotation marks and citations omitted). Therefore, the plaintiffs' cause of action alleging sexual assault brought pursuant to federal criminal statutes should be dismissed for failure to state a claim upon which relief can be granted. To the extent plaintiffs are attempting to assert this claim under Section 1983, they do not allege the violation of any Constitutional or federal statutory rights and therefore do not state a claim under Section 1983. See West, 487 U.S. at 48.

### 3. Racketeering (RICO) Claim.

The complaint alleges that defendants violated the "1970 'RICO' Act and State Rule 12.44."[6] Complaint at 3, ¶ 12. Plaintiffs refer to the Racketeer Influenced and Corrupt Organizations ("RICO") chapter of the Organized Crime Control Act of 1970 (OCCA), as amended, 18 U.S.C. §§ 1961-1968, but do not indicate the portion of RICO on which their claim is based. The Supreme Court has outlined the basic provisions of RICO as follows:

> RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity,' § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, §1962(d)."

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 232-33 (1989). "To recover in a civil suit for a violation of RICO, a plaintiff must prove the defendant "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Handeen v. Lemaire, 112 F.3d 1339, 1347 (8th Cir. 1997).

---

[6]The Court had been unable to determine the meaning of plaintiffs' reference to "State Rule 12.44." There is no such rule in the Missouri Supreme Court Rules. The Court will therefore disregard this reference as surplusage.

Plaintiffs fail to state a claim under any section of RICO because the complaint does not contain any factual allegations to indicate that defendants engaged in a pattern of racketeering activity within the meaning of RICO. Section 1961(1) of RICO defines "racketeering activity" to mean:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to

trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B)[.]

18 U.S.C. § 1961(1). Further, under RICO, a "pattern of racketeering activity" requires at least two predicate acts of racketeering activity committed within a ten-year period. 18 U.S.C. § 1961(5); see H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. at 239-40. The complaint is devoid of allegations that the defendants committed a racketeering acts or a pattern of racketeering acts as these terms are defined under RICO. Plaintiffs' complaint therefore fails to state a claim under RICO.

### 4. Obstruction of Administration of Justice.

Plaintiffs allege in the complaint that defendants obstructed the administration of justice in violation of Rule 26 of the Federal Rules of Civil Procedure. See Complaint at 3, ¶ 13. This claim fails to state a claim upon which relief can be granted. Rule 26 does not create a cause of action for

obstruction of the administration of justice, but rather is a procedural rule which provides general provisions concerning discovery and disclosure in civil cases filed in federal district courts. In addition, a violation of Rule 26 cannot form the basis of an action under 42 U.S.C. § 1983. Therefore, plaintiffs cannot state a claim upon which relief can be granted for obstruction of justice based on Rule 26.[7]

### C. State Law Claims.

Plaintiffs' complaint asserts the following state-law claims: improper civil commitment, undue influence, invasion of privacy, tortious interference with prospective business advantage, and intentional infliction of emotional distress. See Complaint at 3, ¶¶ 10, 13-16. Where a court has dismissed "all claims over which it has original jurisdiction," see 28 U.S.C. § 1367(c)(3), it has the discretionary authority to decline to exercise supplemental jurisdiction over remaining state law claims. See Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir. 1994) (per curiam); McLaurin v. Prater, 30 F.3d 982, 984-85 (8th Cir. 1994).

Because the Court has dismissed all of plaintiffs' federal claims and does not have diversity jurisdiction over this case, it will decline to exercise supplemental jurisdiction over the state law claims, and will dismiss the same without prejudice to their refiling in state court. The Court's exercise of its discretion is informed by the Eighth Circuit's instruction that "federal courts should exercise judicial restraint and avoid state law issues wherever possible." Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir.) (internal citation and quotation omitted) (approving district court's decision to decline to exercise supplemental jurisdiction over state-law tort claims after it granted summary

---

[7]The Court is unaware of any potentially available federal civil claim for obstruction of the administration of justice.

judgment on the federal claims), <u>cert. denied</u>, 531 U.S. 1013 (2000). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Barstad v. Murray County</u>, 420 F.3d 880, 888 (8th Cir. 2005) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).

**<u>Conclusion</u>**.

For the foregoing reasons, the Court concludes that plaintiffs' claims under 42 U.S.C. § 1983 are barred by the principles of <u>Heck v. Humphrey</u>. Plaintiffs' other federal claims, for sexual assault, RICO violations, and obstruction of the administration of justice, should be dismissed for failure to state a claim upon which relief can be granted. As a result of this conclusion, the Court need not address defendants' arguments concerning the corporate plaintiffs' capacity to sue or the allegedly frivolous nature of plaintiffs' complaint. The Court will decline to exercise supplemental jurisdiction over plaintiffs' state law claims and will dismiss those claims without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss plaintiffs' complaint is **GRANTED** with respect to plaintiffs' claims based on 42 U.S.C. § 1983 and other federal claims. [Doc. 9]

**IT IS FURTHER ORDERED** that plaintiffs' state law claims are **DISMISSED without prejudice**.

An appropriate order of dismissal will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __23rd__ day of June, 2006.